IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

FILED
DISTRICT COURT
DISTRICT OF MARYLAND

2016 NOV 14  P 12: 24

CLERK'S OFFICE
AT GREENBELT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | Case No.: GJH-15-3475 |
| v. | |
| $12,735.53 in U.S. Currency, | |
| Defendant. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Pending before the Court is a Motion for Default Judgment, ECF No. 7, filed by Plaintiff, the United States of America ("the Government") against Defendant, $12,735.53 in U.S. Currency ("the Defendant Currency"), in this civil forfeiture *in rem* action.[1] A hearing on this motion is not necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, Plaintiff's Motion for Default Judgment is granted.

I.   **BACKGROUND**

On April 9, 2015, the Defendant Currency was seized by federal investigators from a Bank of America bank account. ECF No. 1-1 at ¶ 37.  The bank account had been opened by Olakunle Moruf Olukunga on May 8, 2013 at a Greenbelt, Maryland branch of the bank. ECF No. 1-1 at ¶¶ 14, 37. The Government asserts that the Defendant Currency constitutes the proceeds of a wire fraud and money laundering scheme, and is thus subject to forfeiture pursuant

---

[1] An action *in rem* is when a case is brought against a piece of property rather than an individual. "The essential function of an action in rem is the determination of title to or the status of property located—physically or legally— within the court's jurisdiction. Conceptually, in rem jurisdiction operates directly on the property and the court's judgment is effective against all persons who have an interest in the property." § 1070 Jurisdiction Based on Property—In General, 4A Fed. Prac. & Proc. Civ. § 1070 (4th ed.).

to 18 U.S.C. § 981. ECF No. 1 ¶ 5; *see also* ECF No. 1-1 ¶ 44. The scheme allegedly involved

multiple victims across the United States beginning in or around late 2014 and continuing

through 2015. ECF No. 1-1.  The victims were convinced to deposit and cash counterfeit checks

or deposit money from their own personal accounts into various specified accounts as part of

online employment and dating scams. *Id.*

The bank account at issue allegedly received the proceeds from an online dating scam

involving victim B.C. *Id.* ¶ 37. Gerald Kinser ("Kinser") contacted B.C. on Match.com in

November 2014, indicating that he was interested in a relationship with B.C. *Id.* ¶ 7-8. From

November 2014 through January 2015, Kinser requested money from B.C., claiming he was in

trouble and having money problems while in Malaysia. *Id.* ¶ 8. Following Kinser's instructions,

B.C. transferred money to various pre-designated accounts during that time period. *Id.* ¶¶ 9, 14.

One of those transfers occurred on January 20, 2015, when B.C. deposited $4,000 from a

personal checking account into the Bank of America bank account opened by Olukunga. *Id.*

B.C.'s transactions were also linked to four other victims, who were similarly convinced to cash

and deposit counterfeit checks or deposit money from their own personal accounts into other

specified accounts. *Id.* ¶ 37. Bank records from Olukunga's account also show two counter credit

cash deposits of $5,000 and $5,500 in January and February 2015, which the Government alleges

are similar to transactions conducted by other victims. *Id.*

On May 28, 2015, Detective Hebding of the Baltimore County Police Department's

Financial and Cyber Crime Unit,[2] received a copy of a forfeiture petition filed by Olukunga

regarding the seizure of Defendant Currency from his bank account. *Id.* ¶ 39. In the petition,

Olukunga claimed to have no involvement with the fraudulent activity linked to his account. *Id.*

---

[2] In conjunction with his role in the Baltimore County Police Department, Detective Hebding also works as Task Force Officer for the U.S. Department of Homeland Security, Immigration and Customs and Enforcement, Homeland Security Investigations, Document Benefit Fraud Task Force. ECF No. 1-1 ¶ at I.

Instead, Olukunga claimed that the Defendant Currency was the result of three legitimate transfers from the Bureau-de-change Operator in Nigeria into his account. *Id.* ¶ 40.  Olukunga stated that he had given his Bank of America account number to a colleague so that the colleague could transfer funds from the Bureau-de-change Operator in Nigeria to the United States to pay for medical expenses for his wife. *Id.* ¶ 40.

Detective Hebding investigated these claims and found that none of the referenced bank transfers originated from the Bureau-de-change Operator in Nigeria as Olukunga alleged. *Id.* ¶ 41-44. Detective Hebding determined that the first transaction was a transfer from the personal checking account of victim B.C. *Id.* ¶ 42. Further investigation revealed that the second and third transactions were not transfers from the Bureau-de-change Operator in Nigeria either; instead, they were out-of-state counter deposits of cash. *Id.* ¶ 43.

On November 13, 2015, the Government filed a verified complaint seeking forfeiture of the Defendant Currency pursuant to 18 U.S.C. § 981. ECF No. 1.  A copy of the complaint was sent to Olukunga on December 8, 2015, along with instructions for filing a claim. ECF No. 4-2. Notice of the case was also posted on an official government website (www.forfeiture.gov), for at least thirty consecutive days, beginning on December 9, 2015. ECF No. 4-3. On February 12, 2016, the Government moved for Clerk's Entry of Default. *Id.* The Clerk entered Default Judgment as to the Defendant Currency on March 4, 2016, ECF No. 6, and the Government subsequently filed the pending Motion for Default Judgment, ECF No. 7, on March 29, 2016.

## II.   DISCUSSION

This matter is governed jointly by Rule 55(b) of the Federal Rules of Civil Procedure, which concerns Motions for Default Judgment generally, and Supplemental Rule G of the Federal Rules of Civil Procedure, which concerns forfeiture actions *in rem* specifically. *See*

*United States v. One 2003 Mercedes Benz CL500*, No. PWG-11-3571, 2013 WL 3713903, at *2-3 (D. Md. July 15, 2013).

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)). "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). When considering a Motion for Default Judgment, the Court "must [then] determine whether [those] allegations . . . support the relief sought in th[e] action." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013) (citation and internal quotation marks omitted).

Supplemental Rule G of the Federal Rules of Civil Procedure lays out the pleading and notice requirements of a civil forfeiture *in rem* proceeding arising from a federal statute. *See* Fed. R. Civ. P. Supp. G. To initiate a civil forfeiture case, the Government must submit a verified complaint that states the Court's jurisdiction over the property, including the statute under which forfeiture is sought; describes the property and its location with reasonable particularity; and states "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(2). In a civil forfeiture case, "the

burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c). If, as is the case here, the Government's theory of forfeiture is that the property was "used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government must establish that there was "a substantial connection between the property and the offense." *Id.* However, "[t]he hurdle imposed by the substantial connection requirement is not ... a particularly high one." *United States v. One 2003 Mercedes Benz CL500*, No. PWG-11-3571, 2013 WL 3713903, at *4 (D. Md. July 15, 2013)(internal quotation and citation omitted).

Turning to the notice requirements, a judgment of forfeiture "may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." Fed. R. Civ. P. Supp. G(4)(a)(i). The Government is required to provide notice of the forfeiture proceedings both to the public generally, and directly to any known potential claimants. Fed. R. Civ. P. Supp. G(4). Therefore, default judgment is appropriate in this case if the Government has complied with the notice requirements of Supplemental Rule G(4) and has shown, by a preponderance of the evidence, a "substantial connection" between the Defendant Currency and the alleged wire fraud and money laundering scheme. *See United States v. One 2003 Mercedes Benz CL500*, No. PWG-11-3571, 2013 WL 3713903, at *4 (D. Md. July 15, 2013).

Here, the Government has met the notice requirements of Supplemental Rule G(4) by sending a copy of the verified complaint to Olukunga, the only known potential claimant. ECF No. 4-2; *see also* Fed. R. Civ. P. Supp. G(4)(b)(i). The Government also notified the general public by posting notice of this case on an official government internet site for more than 30 days. ECF No. 4-3; *see also* Fed. R. Civ. P. Supp. G(4)(a)(iii). The notice included the amount of

currency at issue, the bank account number, the name of the bank account holder and the date of seizure, thus meeting the requirement to describe the property with reasonable particularity. Fed. R. Civ. P. Supp. G(4)(a)(ii).

Accepting the facts alleged in the complaint and in Detective Hebding's declaration as true, the Court finds that the Government has shown that there is a substantial connection between the Defendant Currency seized from Olukunga's account and the alleged wire fraud and money laundering scheme. Wire fraud, as defined in 18 U.S.C. § 1343, is when a person devises, or intends to devise, a scheme to defraud, and uses the mail or wire communications in furtherance of the scheme. *See* 18 U.S.C. § 1343. In a related statute, 18 U.S.C. 1956(h) establishes that it is illegal for two or more persons to agree to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or 18 U.S.C. § 1957. *See* 18 U.S.C. 1956(h), *see also United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010). Those substantive offenses include for example, conducting or attempting to conduct a financial transaction that involves the proceeds of specified unlawful activity or concealing or disguising the source or ownership of property believed to be the proceeds of specified unlawful activity. *See e.g.* 18 U.S.C. 1956(a)(1), (3). Property that is the proceeds of the above referenced specified unlawful activity is subject to seizure and forfeiture. *See* 18 U.S.C. § 981.

Here, accepting the well-pled allegations in the complaint as true, the Government has shown by a preponderance of the evidence that the Defendant Currency was connected to a web of wire fraud and money laundering schemes, occurring in and around 2014 and 2015. The Declaration of Detective Hebding, attached to the Government's verified complaint, establishes that victim B.C. was manipulated by Kinser into depositing $4,000 into Olukunga's account. ECF No. 1-1 ¶ 14. While the Government does not appear to have identified the specific

6

individuals who deposited $5,000 and $5,500 into Olukunga's account in January and February 2015 respectively, Detective Hebding alleges that those are similar to deposits completed by victims J.M. and T.M. *Id.* ¶ 37. T.M. was a victim based in California who, in January 2015, was convinced to cash two checks in the amount of $3,225 that she received into her own account, and then deposit the money into other accounts as part of an online employment scheme. *Id.* ¶¶ 18-25. After having successfully deposited the money into other accounts as instructed, T.M. was informed that her own account was overdrawn because the two checks turned out to be counterfeit. *Id.* ¶ 25. J.M. was the victim of a similar scheme in December 2014 where she was convinced to deposit what turned out to be fraudulent checks in the amount of $2,990, $3,700 and $4,500 and pay the proceeds from her own checking account into other Bank of America accounts. *Id.* ¶ 6. Due to the similarity in the time frame and the quantity of money involved, and the links between the transactions of B.C. to other victims including J.M. and T.M., the Court finds that the deposits of $5,000 and $5,500 were also substantially connected to a wire fraud and money laundering scheme.

Additionally, in his forfeiture petition to Detective Hebding, Olukunga had alleged that these transactions were legitimate deposits from Nigeria. ECF No. 1-1 ¶ 40. Detective Hebding investigated these claims and found that, in contrast to Olukunga's assertions, the transactions were actually out of state counter deposits. *Id.* ¶ 41.

Thus, the Court finds that because the notice requirements were met and there is a substantial connection between the Defendant Currency and the alleged wire fraud and money laundering scheme, default judgment is appropriate.

III.    CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for

Default Judgment is **GRANTED** and judgment is hereby **ENTERED** in favor of Plaintiff

against Defendant, $12,735.53 in U.S. Currency. A separate order follows.


Dated: November 14, 2016

GEORGE J. HAZEL
United States District Judge